Stryker v. the City of Homewood. Mr. Guestpass? Thank you, Judge Pryor, and may it please the Court. This is David Guestpass, representing the appellate Moses Stryker. This is a case, in its essence, involving alleging excessive force when Mr. Stryker violated a municipal ordinance of failure to comply and ended up with permanent disabilities and a broken jaw. Now, Mr. Guestpass, I want to tell you something right off the bat. I am concerned that the District Court did not read the evidence in the light most favorable to your client. Okay? So I'll start out with that. I am concerned about that and that there may be error here. But I also have a concern that your brief is picking parts of defendant's evidence that doesn't square with your own client's testimony and picking and choosing the parts of the defendant's evidence that favors your client, but it directly contradicts what your client's saying. And it seems to me that when we look at the evidence in the light most favorable to your client, we really are having to take your client's account of what happened and not credit the defendant's account. Do you understand what I'm saying? I think I do, Judge, and I actually pointed that out. We said early on that we understand that the facts as we allege them were not, were all disputed. That, you know, Officer Davis had a completely different outlook on this case than did we, but for purposes of summary judgment, I contend that Mr. Stryker's version of the facts is the one that has to be looked at because what we're talking about is whether they are in dispute or not. And if one looks at the case from the light most favorable to the plaintiff, that means that Mr. Stryker's testimony is what counts and not Officer Davis's. Because there, I'll give you a few examples if I may. Officer Davis claimed that Stryker went into his pocket for the And that, if he did that, I will freely admit that if a jury accepts Officer Davis's testimony as true, then he's going to win this case. But that's for a jury to decide and not for a judge on summary judgment. Mr. Stryker said he went- To me, that on appeal, you want to say that Davis told Stryker to go to his truck and that your client complied. But that's not what his testimony was. His testimony was, as I understand it, was that Davis never told him to go to the truck. And later, that he did not have about there being kind of a Frankenstein two narratives where we take some of what Davis said and take some of what your client said and now, you know, put them together to create something completely different. I guess my response to that, Judge, is that whether or not- and there's evidence both ways. Indeed, there's evidence in the criminal trial from Mr. Ibn Deagle, who was with Mr. Stryker, to the effect that he was- earlier on, he was told to go back into the going back to the truck when he was tased. And whether it was in compliance with Officer Davis's command or not, that's what happened. And if he was, in fact, going back to the truck for whatever reason, and was- Well, I mean, one of the concerns I have is that your client testified that Davis told him not to put the camera in his truck, but he went toward the truck anyway. So in sorting this out, one of the things I'm concerned about is whether your client was reasonably obeying the officer's directions in this, you know, predicament. Well, I'm not sure that is the decisive factor here, Judge, because we're not alleging a false arrest. We're alleging excessive force. We acknowledge that he was convicted of failure to comply at whatever time. There were several commands that Officer Davis gave, and the criminal case has resolved that at least one or more of them were orders to go back to the truck, and Officer Davis was a little vague about those as well. But there was no dispute that Officer Davis had a right to arrest Mr. Stryker. The dispute is whether he used excessive force in doing that. And without even telling him he was under arrest, without going through the continuum of force that Officer Davis testified about and recognized, the first thing he did was tase Stryker in the back. And for any other less severe method of either arresting him or getting him to comply. And that, I think, is really the critical issue here. If we were alleging false arrest, then I think the question about whether Stryker was complying when he denied being told to go back is a more salient question. But if the only question is excessive force, then I would suggest that the use of a taser without even telling him he was under arrest, without giving him any warning, is clearly excessive. And that is the essence, I think, of the case. Particularly where the more serious crime, the hit-and-run, the officer had already determined, although he was waiting for a Birmingham officer to confirm it, he had already basically cleared your client of that, right? Yeah, for his purposes, yes. He had made a full determination. And by the way, hit-and-run without injury is still a misdemeanor in Alabama. So, in any event, what we're talking about is, at best, a non-compliant, but a subject who, however, is not actively resisting arrest because he never even knew he was under arrest, and was not attempting to flee. And under those circumstances, I would suggest that it's obvious that the force used was excessive. And I would just mention one thing. What is most significant here, I think, in all the various disputed facts, Davis says Stryker tried to Stryker denies attempting to elbow him, says there was no armbar and takedown, and that the tasing was the first thing that happened, and it happened unexpectedly. And that dispute, I think, is the essence of the case. That is a matter, as this court said, I think, in Sears and other times as well, it's just a swearing contest, and that's the stuff of which jury trials are made. With that, I will, unless there are other questions, I will see you the rest of my time. Thank you, Mr. Gaspas. You've saved five minutes for rebuttal. Mr. Perkins. Good morning, Your Honor. Alfred Perkins for Officer Davis, Officer Blake, and Officer Wade. To address, Your Honor, Judge Price, your concern, I wanted to point out that when we look at the facts in the light most favorable to Mr. Stryker, those facts have to include the fact that he violated orders to get back in his truck, and he turned and walked away from Davis, again, in violation of the law. To tase him, I mean, that suspected crime of a misdemeanor, to tase him without warning, that's more than a bit much in that circumstance, isn't it? Well, the circumstance here is, immediately prior to the tasing, when he has to draw his gun on Mr. Stryker, Mr. Stryker then yells at Officer Davis, and earlier in the evening, Mr. Stryker objected to following Officer Davis' commands about moving the truck and other things, and in fact, Officer Davis, according to Stryker's own testimony, warned him twice that if he didn't shut up and do what he said, that he was going to, quote, lock his ass up. So we don't come into this with there being no context of any disagreement or strife. Is that testimony from Mr. Stryker or from Mr. Davis? It's from Mr. Stryker. Do we have any case where we've ever approved an officer tasing, without warning, a suspect who's not armed, not violent, not suspected of a serious crime? Do we have anything? Yes, Your Honor, that's the Draper case. In fact, in Draper, he was not complying with getting documents out of his truck, and the officer there, without announcing that he was under arrest, tased him, and this court found that to be reasonable. I mean, so the hostile, belligerent, uncooperative suspect in Davis, you're saying the evidence that Stryker yelled at the officer is enough to rise to that level? I'm not suggesting that they're identical, but the circumstances are very similar. It was an order to get information to Draper that he failed to comply with. It was several orders to Stryker to return and go sit in your truck. And more importantly, there was an order to Stryker that he testified to that Davis told him to come here. And after being told to come here, that's when Stryker turned and started to walk away from Davis, and that's what the jury found was a violation of one of Davis' orders and convicted him of that. So he doesn't get to re-litigate whether or not his turning away and walking away from Davis... It's not so clear to me what that conviction means, and the determination of facts that we have to regard as preclusive. Just the failure to obey any one command would be enough to establish that conviction, to sustain that conviction. Well, Judge, we have here at least four commands. The criminal complaint... It's the testimony at the criminal trial from Officer Davis. But I don't know what the fact finder necessarily credited as the basis for sustaining that conviction. You're saying I have to read that conviction in the light most favorable to the officer? No, Your Honor, I'm saying you have to accept what the jury found in its verdict. Necessarily found? Right, and necessarily... What did they necessarily find? The jury verdict said they found Stryker guilty as charged in the complaint, and it's the complaint that provides the specifics to support the estoppel argument that we're making, because it's the complaint that says he refused several times of my commands for him to get back in the vehicle. Wouldn't one such refusal... Any one of those would be enough, wouldn't it? To support the conviction, yes. Yes, and we don't know which one it was. But that's the point. The complaint itself says there were several times, and the testimony at the criminal trial, there were testimonies of several times. Davis testified that I told him to have a seat in his truck. I think you're missing my point. I'm sorry. I know that may be what the complaint says, and that may be what the testimony was, but what I can't tell from the conviction is which of those lawful orders or whether all of those lawful orders were the ones that the fact finder necessarily found supported the conviction. I can't tell. Well, there were three orders to stay in the truck, and there was one order to come here. And because of the way the complaint is worded, that he refused several times, it doesn't matter if it was one or if it was three, there is... ...a second jury gets to decide that question. Because of the language of the complaint. If it had said he refused one order or an order, but the complaint says he refused several times... You don't think that the jury could have convicted unless it concluded that he had disobeyed all four orders? I doubt that's what the prosecutor would have argued. But that's what the verdict... I doubt that's what the jury was instructed. Indeed. Wouldn't it be nice if we had a dashboard video of what had happened? Is there any excuse for Officer Davis having turned off his camera before this incident? Is that typical practice? Yes, Joan. In this particular situation, he's there, and he found out it's an accident that's not in his jurisdiction. So all he's intending to do is wait for the proper jurisdiction to come. He's not performing an investigation, and so he didn't see a need for the camera to be on. Now, as we get back to what is preclusive, there's the case of Kessler. Wood v. Kessler in this court, where Mr. Kessler was cited for going 17 miles per hour over the speed limit in a construction zone, and he was cited for speeding. He decided he wanted to have a trial on that charge, and at the court, the day of the trial, after talking to the district attorney, the district attorney instructed the state trooper to charge him also with reckless driving, and they go to trial. He's convicted on the speeding but found not guilty on the reckless driving, and he filed a 1983 action challenging the arrest for reckless driving, and the court held in that case that because the jury found that he was guilty as charged and because the complaint charging speeding found that he was going 17 miles per hour over the speed limit, he could not relitigate whether or not that fact existed, and that's a sufficient fact. Yeah, of course, but that's a very different situation from here. The problem here is where the complaint alleges that he refused several times to follow the officer's commands. The problem is that the failure to comply with any one of them would be enough to sustain the conviction. I mean, in the speeding situation, he was either speeding or he wasn't, period. And again, I point to the specific language in the complaint that accused him of several times, and then the jury verdict that agreed with a guilty verdict as charged in the complaint. Now, if you go to the Code of Alabama, the crime that we're talking about, though, is a refusal to comply with any lawful order of any law officer. It's just any one of the orders would have been enough. Yes, I understand that code section, but the issue again is what did Officer Davis put in the charging instrument that the jury accepted as written, and that instrument refers to several times, so he can't say that he only violated one order. It doesn't work that way, Mr. Perkins. The jury could have convicted even if it thought that only one of the lawful commands was enough. That's the problem you have. They don't have to accept that the officer was right about it being several. He's guilty of the offense under Alabama law if he refused to obey just one of them. He's guilty of offense in the statute. But what I'm suggesting and where the collateral estoppel comes into play is because of the specificity of the complaint, and this was addressed in that Hunter B. Lee's case where the court couldn't tell which time of pointing the gun at the officer was the time that the jury accepted when they found him guilty or when he's not the jury. Let's assume for purposes of argument that we disagree with you. If we disagree with you about that, do you have any other arguments,  Yes, Your Honor. If you disagree about the number of times that he failed to comply, there is the second part of the complaint that said he also turned and tried to walk away from me, again refusing to comply with my order, and there is only one time in the record after being ordered to come here by Davis that Mr. Stryker turned and walked away from him, and that's when he was trying to get away from Officer Davis, and he admits he's trying to get away from Officer Davis, and that's the only time in the record where that happens. The problem is Stryker wouldn't know that he was under arrest, right? He admitted that. You mean before the case, Your Honor? Yes. Right, there was no announcement that he was under arrest. Yes, so he's just walking toward the truck. Davis has time to attempt a verbal arrest, to tell him, look, if you don't stop, I will have to use force. I'll have to tase you. He has time to do all that, doesn't he? At this point in time, Your Honor, he has violated several orders to come here. In fact, again, to go back to... Well, let's assume for our purposes, we're not going to keep relitigating this, Mr. Perkins. Let's assume that what Stryker has done is refuse to obey an order not to go to the truck. Not several orders, that's it, that one order. So when Mr. Stryker, I mean when Officer Davis arrives on the scene, Ms. Barnett, who is the person that was in the car that was claiming 545... Counsel, your time has expired. Okay, let's summarize. We're going to hear from Mr. Sides for two minutes. Good morning, may it please the court. My name is Terry Sides, and I represent the city of Homewood. The parties agree, and the law, of course, is well settled, that when a plaintiff has failed to show a constitutional violation, then there's no basis to hold a city liable under Section 1983. What this means, of course, is if the district court in this case got it right that no constitutional violation was shown, then the district court also got it right in granting summary judgment for the city of Homewood. Having said that, let me quickly add just a couple of points to what's already been said about the district court's determination that Mr. Stryker has failed to show that the Homewood police officers violated his constitutional right against excessive force. The case boils down to whether an objective police officer in these same circumstances would have believed two things. One, that Officer Davis's initiation of force, particularly that first hazing, was lawful. Mr. Stryker says in his reply brief that this is, in fact, the determinative question for the outcome of the entire case. The second point is whether the officers also lawfully used force after Mr. Stryker says that he had his hands. Now, regarding that first point, the first hazing of Mr. Stryker, that hazing was consistent with this court's holding in the Draper case. Draper made clear a police officer is not required to start with a verbal arrest command. Does that apply where someone is simply walking away from a police officer? It applies, Judge, when the facts show that giving a verbal command could have likely escalated an already tense and difficult situation into a serious physical struggle in which either the officer or the suspect could have been injured. And when you look at the facts of this case... What if we said this, Mr. Saenz? What if we were to suppose that, in fact, this was excessive force, but that the officer nevertheless gets qualified immunity because it wasn't clearly established, particularly in the light of Draper? Wouldn't we have to vacate the summary judgment in favor of your client, the city, and send that back? Because there's potentially Monell liability that needs to be discovered and that needs to be hashed out. It is my understanding of the law, Judge, that if a violation is found but it was not clearly established, then the Monell claim against the city could proceed forward. Counsel, your time has expired. Any other questions? Judge Jung? Judge Grant? Nothing. Okay. Nothing. Okay. Mr. Gespass. Thank you, Judge. David Gespass again for Mr. Stryker. I will be brief because I think this has been covered. I would say, first of all, Draper is clearly distinguishable. We are talking here about someone who may be noncompliant but at the same time is also not actively resisting arrest and that Davis knew did not have a weapon. You know, the idea that in the face of it – Let's say I agree with you. What makes it a clearly established violation? Well, I would go back to, first of all, there was – okay, Gilmour, which is an old case that said a circumstance where the decedent actually was fighting with the officers and knocked the gun out of his hand because the officers were the ones who provoked that response. They could not rely on their fear in order to raise the defense of qualifying immunity. I would cite Lee v. Ferraro, which talked about it's plainly excessive, wholly unnecessary. There's no provocation, though, by the officer, right? I mean, if the evidence is that your client is disobeying an order, granted, not a serious crime, granted, with no warning, tasing him may be excessive force. But what establishes that that's so clear to him that he's on notice that that violates the Fourth Amendment? Okay, a few points. One, the Hadley case that said gratuitous use of force with a criminal suspect is not resisting arrest constitutes excessive force. Calderin and Mercado were cases involving use of deadly force, but I think they put – reasonably put an officer on notice that – What about the Fills case? I'm sorry? Wouldn't the Fills case support your argument as well? I think it does. I think that even – yes. And I would also note this. I mean, I think there are plenty of cases that put officers on notice that tasing without warning a non-resisting, non-violent subject who is guilty of a minor misdemeanor is excessive. The other thing is even Davis's testimony about his training and about the use of continual force makes it clear that he knew about that. He understood that the first thing you do is an officer's presence. The next thing you do is verbalize something. The next thing you do is soft hand. The tasing is high up on the continual force. And in some ways that, I would suggest, is more significant – Two minutes remaining. Is more significant than the question of what the case was because officers are not reading every case that comes down with all the respect from the circuit. But they are trained in what they can and can't do constitutionally. And Officer Davis testified to what he could and could not do constitutionally. And he, indeed, admitted that if the facts were as Stryker claimed, then that was inappropriate use of force. So he was clearly on notice. Do you have a record site for that testimony? I'm sorry? Do you have a record site for that testimony? If you give me a second, I do. It was in his deposition. And that was, okay, I'm sorry. Volume 5 of the transcript of the deposition, pages 89 and 90, which is the appellate record, page 82. He testified to the continuum of force. And then in volume 5 at pages 223 and 224, which is the appellate record 115, he acknowledges that Stryker's version is different from his. Counsel, this might help you, the officer's trial testimony of 152. If the defendant hadn't swung at me, I'd had no justification at that time to use force. His trial testimony changed a little bit from his depo. Yes, or vice versa. Yes, he then acknowledges in his deposition that he did have reason to arrest Stryker before that. But the basic point is that Davis clearly knew what his responsibility was. And he simply denies that he did what Stryker claimed he did. And that, once again, is the stuff of which jury trials are made. Counsel, your time has expired. Okay, Mr. Gaspas, we have your case and we'll take it under submission. We appreciate your argument very much. We'll be adjourned until tomorrow. Thank you, Judge. Have a good day.